### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**Case No.: 19-CV-20424-UU**

YMD RECORDS, LLC d/b/a RAPTURE
ELECTRONIC MUSIC FESTIVAL

        Plaintiff,

vs.

ULTRA ENTERPRISES, INC.,
CITY OF MIAMI,
VIRIGINIA KEY BEACH TRUST, and
EVENT ENTERTAINMENT GROUP, INC.

        Defendants.

_____/

### AMENDED COMPLAINT FOR INJUNCTION
### AND DAMAGES AND DEMAND OF TRIAL BY JURY

Plaintiff, YMD Records, LLC d/b/a Rapture Electronics Music Festival ("Rapture"), by and through its undersigned attorneys, sues Ultra Enterprises, Inc. ("Ultra"), City of Miami ("City"), Virginia Key Beach Trust ("VKBT") and Event Entertainment Group, Inc. ("EEG"), and alleges:

1.      Rapture brings this action to challenge and seek redress from certain anticompetitive, exclusionary, unfair competition, tortious and monopolistic conduct by Ultra, City of Miami, EEG and Virginia Key Beach Trust. The Defendants' acts described below violate the Sherman Antitrust Act, 15 U.S.C. §§1 and 2, and FDUPTA, and Plaintiff is entitled to declaratory relief that the approval of Ultra music festival for March 2019 is void and of no effect.

2.      The Sherman Antitrust Act is the most prominent and sweeping fair competition law in the United States. It forms the backbone of American antitrust law and fair competition

policy. The Clayton Act, 15 USC § 12 et. seq., supplements the Sherman Act and provides a private cause of action for violations of the Sherman Act.

3.      Plaintiff Rapture is a Florida limited liability company with its principal place of business located in Miami-Dade County, Florida.

4.      Defendant City is a governmental agency for the City of Miami, Florida.

5.      Defendant VKBT is a trust in Florida associated with its principal location and the subject event in question within this District.

6.      Defendant Ultra is a Florida corporation with its principal location and the subject event in question within this District.

7.      Defendant EEG is a Florida corporation with its principal location and the subject event in question within this District.

8.      Plaintiff brings this lawsuit against Defendants seeking monetary and injunctive remedies for the Defendants' actions.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1336, and 1337 and 15 U.S.C. §§ 15(a) and 26.

10.     This Court has personal jurisdiction over each Defendant because each Defendant resides or is principally located in Florida and/or has substantial, continuous contacts with Florida.

11.     Venue is proper in this District because Defendants are located in this District.  *See* 28 U.S.C. §§ 1391.  Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District.  28 U.S.C. § 1391(b)(2).

12.     Plaintiff Rapture produces a festival at Historic Virginia Key Beach Park with a goal to bring an environmentally conscious festival to Miami that combined a world-class music lineup, while also educating attendees about ocean conservation, sustainability, as well as health and wellness (the "Rapture festival").

13.     For the past two (2) years, Rapture has held its festival on Virginia Key in March.

14.     In light of the success, being environmentally friendly and overall cooperation from Rapture, the Defendants VKBT and City have welcomed and offered Rapture additional years to have its festival at the same time and location.  These years would be 2019 and 2020. A true and correct copy is attached hereto and incorporated as Exhibit A.

15.     In early 2018, the Rapture festival was scheduled for March 29 and 30, 2019 at Virginia Key Beach.

16.     Consistent with the past acts, promises and discussed plans, Rapture submitted its Special Event Application on March 11, 2018 for the 2019 festival and paid its application fee and made its deposit in October 2018. A true and correct copy of the received stamp with date of March 11, 2018 for the application, the application and the receipt of application fee are attached hereto and incorporated as Exhibit B.

17.     Defendant Ultra and EEG run the Ultra electronic music festival that has been involved in a number of issues with the City and public, including being *kicked out* of Bayfront Park in Downtown Miami, which was its home since 2001 (the "Ultra festival").

18.     On or about September 2018, the Miami City Commission of Planning and Zoning voted <u>unanimously</u> against Ultra festival returning to the location for 2019 (the "Unanimous Vote").

19.     Excessively loud music, overwhelming traffic, pollution, garbage and other issues with the Ultra festival have been cited by City advisors, local Miami residents and others in opposition to its continuation in Miami.

20.     By contrast, the Executive Director of the Historic Virginia Key Beach Park stated in 2018 as to Rapture that "[t]his event is endorsed by the management of Virginia Key Beach Park Trust…." *See,* Exhibit A.

21. Part of the goodwill and concept of Rapture being environmentally conscious and located at Virginia Key Beach has been well recognized. By example, DJ Mag stated that "Rapture stands out simply by combining the best in underground music and techno with its unique locale, which is surrounded by pristine beach in a protected environmental oasis."

22. More than five (5) months after Rapture submitted its special event application for its festival, the Unanimous Vote left the Ultra festival without a location in Miami.

23. Prior to the Unanimous Vote, Rapture was on the Virginia Key calendar for March 29 and 30, 2019 for its festival.

24. Losing its home at Bayfront Park and knowing Rapture was set to be the same weekend at Virginia Key, Ultra and EEG targeted Virginia Key for the same weekend.

25. Rapture was informed by VKBT personnel that an unofficial meeting between City officials and personnel from Ultra and EEG took place in October 2018 at the Ritz Carlton Hotel about a move to Virginia Key for the same weekend as Rapture's festival (the "Unofficial Meeting").

26. Rapture was informed by VKBT personnel that Rapture's application was provided at the Unofficial Meeting.

27. Rapture understands from reports, news and the circumstances that the City, EEG, VKBT and Ultra have worked to take Rapture festival's location for the same date in exchange for certain benefits, which were not offered to Rapture to also provide to keep its date and location.

28. In 2017 and 2018, the approval process of the application for the Rapture festival took place as planned.

29. Consistent with its application and the history in 2017 and 2018, Rapture had discussions with City personnel about its hearing for November 2018 to approve its application and have the Rapture festival as scheduled at Virginia Key.

30.     Unknown at the time to Rapture, a meeting of City officials took place prior to the November vote to approve the Ultra festival and the EEG license agreement in November 2018 ("City Meeting").

31.     Rapture was not invited, made aware of and did not attend the City Meeting.

32.     At the City Meeting, City officials were discussing the agenda for the November City public hearing.  At this meeting, certain City officials mislead other officials by stating that Rapture festival was being rescheduled or canceled and that the Ultra festival could then proceed.

33.     In November 2018, the rescheduling or cancelation of the Rapture festival prior to the November City public hearing for approval was not true and not a decision made or accepted by Rapture.

34.     By the time of the City Meeting, Rapture had not withdrawn or modified its application for the Rapture festival at Virginia Key for the weekend of March 29, 2019.

35.     Rapture was informed by City personnel that its approval hearing would not take place in November.

36.     Due to the improper actions and conspiracy of the Defendants, Rapture's application for its festival was ignored, skipped and otherwise disregarded.

37.     Ultra festival's license agreement approval took place instead of the Rapture festival approval hearing in November.

38.     In November, the City passed a resolution approving by 4-1 the Ultra festival agreement for the subject weekend at Virginia Key (the "Official Meeting").

39.     At the Official Meeting on the agreement about the Ultra festival, Ultra and EEG representatives stated they have been negotiating with the City since the Unanimous Vote (September 2018).

40.     At the Official Meeting, City representatives responded to a question that they have only been negotiating for about three (3) weeks (early November to late October 2018) as to the Ultra festival agreement at issue.

41.     At the Official Meeting, certain City officials mislead the commission during the consideration of approving the Ultra festival license agreement that there was no deposit by Rapture for the weekend at issue.

42.     At the Official Meeting, City officials announced that EEG was indemnifying the City associated with the Ultra festival moving to the same weekend and location as scheduled for the Rapture festival.

43.     Despite its effort, Rapture was prevented from correcting this misinformation prior to the vote at the Official Meeting.

44.     In fact, Rapture paid its application fee and made its deposit in October 2018. A true and correct copy of the deposit is attached hereto and incorporated as Exhibit C.

45.     Just this month, City personnel has requested information about potential dates for the Rapture festival or if it will even occur within the City's limits.

46.     Rapture was informed by VKBT personnel to pick up their deposit for their special event application for the subject weekend.

47.     Rapture has been informed that Ultra festival will take place during the weekend of March 29, 2019 at Virginia Key.

48.     Rapture has been informed that there is no plan or way to receive approve of its festival application for March in Virginia Key.

49.     Despite Rapture festival's history and pending application, the City, VKBT, EEG and Ultra discussed, negotiated and/or formulated an agreement to permit Ultra festival and block Rapture's competitive festival at the subject location on the same weekend.

50.     Despite Rapture festival being on the Virginia Key calendar, the City, VKBT, EEG and Ultra discuss, negotiated and/or formulated an agreement to permit Ultra festival and block Rapture's competitive festival at the subject location on the same weekend.

51.     This was an opportunity for Ultra and EEG to shut down its competing Miami based festival held by Rapture.

52.     This was an opportunity for the City and VKBT to obtain a large sum from Ultra and EEG for a license compared to the application fee, deposit and other sums to be charged to Rapture.

53.     The license fee for the Ultra festival, which came at the cost of the Rapture festival, was $2 million.

54.     Rapture paid a special event application fee of $50, license fee for 2019 of $102.50 and $3,000.

55.     The linty of complaints and opposition to Ultra music festival at Bayfront Park's downtown urban setting, including being too disruptive and leaving garbage, did not stop the City and VKBT from approving and otherwise agreeing to the Ultra festival in the delicate ecosystem of Virginia Key.

56.     The Virginia Key Advisory Board, pursuant to the City's own ordinance, considered the Ultra festival at Virginia Key and resolved to oppose the City's arrangement with Ultra music festival and EEG.

57.     The Virginia Key Advisory Board considered the negative impacts to the bird breeding success as one of its factors is opposing a license agreement for the Ultra festival at Virginia Key.

58.     The ridiculousness of allowing the Ultra music festival in such an environmentally friendly location is at least a signal of an antitrust violation and unfair competition.

59.     The City and VKBT have ignored and violated their own rules, Charter, contracts, regulations and procedure in their effort to conspire with Ultra and EEG to the detriment of Rapture.

60.     The City has ignored the rules, recommendations, warnings and demands to further the conspiracy for the benefit of the private enterprise of other Defendants.

61.     The City, Ultra, EEG and VKBT are engaged in anticompetitive actions that violate the Sherman Antitrust Act.  Their acts and deliberate silences have been effective in eliminating competition.  Individually and together, the Defendants are conspiring in restraint of trade and/or create a monopoly.

62.     The City, Ultra, EEG and VKBT are reducing competition, controlling prices, and causing Rapture and its guest and vendors substantial harm.

63.     While Ultra was drawing sharp criticism and anti-festival movement by residents and others locally, Rapture was welcomed back to Virginia Key and by the City of Key Biscayne.

64.     The approval process for special events recognizes that the applicants are taken on a first come first serve basis. *See,* Exhibit B.

65.     Prior to Rapture's festival, Ultra's and EEG's competition was the Winter Music Conference during March in Miami.

66.     Ultra and/or EEG or an affiliated or related entity then purchased Winter Music Conference making it the Miami music festival in March and with only Rapture's festival, which started only in 2017, keeping it from being the exclusive.

67.     If Ultra and EEG are successful with the conspiracy of the City and VKBT, there would be a monopoly and make in nearly impossible for a competitive festival in Miami in March.

68.     While knowing the pending Rapture application, the City negotiated with EEG as to the Ultra festival a license agreement for the same weekend at Virginia Key.

69.     Sections 29-A, 29-B, and 3(f)(iii) of the City of Miami Charter require competitive bidding, independent appraisals, and a return to the City of fair market value, as a precondition for the City to lease or convey any interest to a private entity.

70.     The City has previously violated its Charter and attempted to couch creative titles and terms to its endeavors, including "license". By example, in *Homestead-Miami Speedway, LLC v City of Miami,* 828 So.2d 411 (Fla. 3d DCA 2002), the appellate court found that granting a three (3) day "license" was a fiction and actually a lease in violation of the Charter.

71.     At the Official Meeting, the City and EEG attempted to claim this was a true at-will "license" to avoid the Charter and prior rulings.

72.     However, it is understood under the license agreement that the Ultra festival(s) could not be stopped without at least three hundred sixty-four (364) days' notice prior to the next subsequent Ultra festival event.

73.     If the 2019 Ultra festival takes place, it is impossible for an "at-will" termination before the 2020 Ultra festival takes place due to this notice provision.

74.     Based on available information, this license agreement provides essentially an Ultra festival for 2 years at Virginia Key.

75.     This two (2) year period is the same promised to Rapture (2019 and 2020) at Virginia Key.

76.     The license agreement with such a notice provision is in fact a lease.

77.     The license agreement between the City and EEG as to the Ultra festival violates Sections 29-A, 29-B, and 3(f)(iii) of the City of Miami Charter.

78.     The City and VKBT have ignored and violated their own Charter, rules, contracts, regulations and procedure in their effort to conspire with Ultra and EEG to the detriment of Rapture.

79.     The City, Ultra, EEG and VKBT are engaged in anticompetitive actions and unfair competition.   Their acts are deliberate to silence and have been effective in eliminating competition.  Individually and together, the Defendants are conspiring in restraint of trade.

80.     Rapture has been harmed by having refunds demanded as to its March festival in Virginia Key.

81.     Rapture has lost financial (investors or lenders) supporters to have its festival due to the actions of Defendants.

82.     Rapture has lost the confidence and/or economically beneficial relationship with DJs and vendors due to the actions of Defendants.

83.     Rapture has lost the confidence and/or economically beneficial relationship with its ticket purchasers due to the actions of Defendants.

84.     A result of its objections to the actions of the Defendants, Rapture has seen recent changes to its negotiations and ability to have events in the City, like Jungle Island.

85.     Jungle Island management has informed Rapture that Rapture's position with the City as to the Ultra festival has a direct correlation on their business negotiations.

86.     A known result of the City entering into an agreement with EEG as to the Ultra festival, while having the earlier filed Rapture festival application was restricting the competition of Rapture and leaving Ultra and EEG with a monopoly.

87.     The Ultra festival, including EEG, has prevented DJs and other vendors from working with others within Miami prior to, during and after the Ultra festival.

88.     Due to size of the Ultra festival, it has an uneven and improper ability to cripple its competitors and control its vendors from working with others in Miami.

89.     As a result of the Defendants' actions, Rapture is unable to inform its vendors, ticketholders, prospective guests and many others about its festival taking place at time certain.

90.     Defendants' actions have driven away ticket purchasers, vendors, sponsors, DJs, and others from Rapture, thereby damaging Rapture's business and goodwill.

91.     Due to the actions of Defendants, Rapture has been damaged.

92.     In a final attempt to prevent further damage, Rapture, through its legal counsel, sent a cease and desist letter (the "Cease and Desist Letter").  A true and correct copy of this letter is attached hereto is attached as Exhibit D.

93.     The Cease and Desist Letter has been ignored.

94.     The Defendants' anticompetitive conduct and unfair competition has dramatically impacted Rapture's business and goodwill.

95.     This clear conduct by Defendants was to target Rapture by taking its festival date and location (for the past two years) and declared for 2019 and 2020.

96.     But for the Defendants' conduct, Rapture would be having its festival on Virginia Beach Key on the same weekend.

97.     Defendants' activities and the conduct of Defendants occurred in and/or affected a substantial portion of interstate commerce, including trade and commerce to, from, and within this District.

98.     Ticket purchasers, vendors and DJs come from various states and even out of the Country.

99.     Defendants' actions to interfere and limit the competition of Rapture has a market-wide impact affecting interstate commerce for the festivalgoers, investors and the companies that support and work with festivals.

100.    Rapture files this lawsuit to obtain injunctive relief preventing current and further anticompetitive actions and to recover treble damages under Federal law.

**Count I**
**Combination and conspiracy in unreasonable restraint of trade**
**in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1**

Plaintiff incorporates by reference as if fully set forth the allegations in a paragraphs 1-100 of this Amended Complaint.

101.   As described above, Rapture has become a growing alternative in competition to the March Ultra festival in Miami.

102.   Rapture's festival location was well known to the Defendants, including the promises for 2019 and 2020.

103.   Defendants have conspired and several of the Defendants are entering into or otherwise benefit from an anti-competitive agreement that harms and otherwise damages Rapture.

104.   The City and EEG attempted to claim this was a true at-will license agreement to avoid the Charter and prior rulings.

105.   However, it is understood that the Ultra festival(s) could not be stopped without at least three hundred sixty-four (364) days' notice prior to the next subsequent Ultra festival event.

106.   If the 2019 Ultra festival takes place, it is impossible for an "at-will" termination before the 2020 Ultra festival takes place due to this provision.

107.   This license agreement provides essentially 2 years at Virginia Key, which is essentially the same term announced for Rapture at Virginia Key.

108.   Without Rapture's festival taking place as announced to those that have purchased tickets and those interested, it will continue to lose financial supporters for the Rapture festival and have its goodwill further damaged.

109.   Without Rapture's festival taking place as announced to the DJs and other vendors associated with the Rapture festival, it will lose critical beneficial relationships to hold a festival and further lose its goodwill.

110.    Based on information and belief, the license agreement has an exclusivity clause, and clause limiting the use of the subject location for competitors.

111.    Based on information and belief, the license agreement has additional language that restricts the City from allowing a part of Virginia Key from being used by a similar event for a number of years.

112.    It was known to the other Defendants that Ultra, EEG or its related or affiliated entities previously purchased it competitor, Winter Music Conference, to garner an unreasonable restraint on trade.

113.    The Ultra festival blocks DJs from performing at other locations within Miami prior to, during and following the Ultra festival, which includes the Rapture festival.

114.    Defendants' actions are a restraint of trade, resulting in harm both to competition generally and to Plaintiff specifically, in violation of Section 1 of the Sherman Act, and as supplemented by the Clayton Act.

115.    By its efforts and conduct, Ultra and EEG have made it possible to utilize an unreasonable restrain on trade and limiting access to DJs, performers and other vendors that support competitive festivals.

116.    The unlawful combination and conspiracy by Defendants as detailed above, in which they are refusing the Rapture festival as originally scheduled since 2018, which would exclude Rapture from its promised location on the weekend at issue for the benefit of other Defendants, constitutes the exclusion of competitors from the relevant market space by market participants with market power, and thus a per se antitrust violation.

117.    The unlawful combination and conspiracy by Defendants also resulted in an unreasonable restraint of trade.

118. Virginia Key Advisory Board, who is tasked with advising and making recommendations to the City with operation of Virginia Key opposed Ultra festival at Virginia Key.

119. The City has ignored its Charter and other rules, recommendations, warnings and demands to further the conspiracy for the benefit of a private enterprise of the other Defendants.

120. Rapture is the class of persons or entities meant to be protected by the antitrust laws.

121. Defendants' unlawful combination and conspiracy injured competition in the relevant market, including by reducing consumer choice, reducing the output of music industry vendors and performers, and controlling prices, and proximately caused Plaintiff's economic loss and damages, which it seeks to recover.

122. In addition to injunctive relief and actual damages, pursuant to 15 U.S.C. §15, Rapture seeks to recover treble damages, punitive damages, costs and attorneys' fees.

WHEREFORE, Plaintiff, Rapture respectfully requests that this Honorable Court:

(a) adjudge and declare that Defendants have engaged in unlawful conduct in violation of § 1 of the Sherman Act, 15 U.S.C. § 1;

(b) award Plaintiff actual damages, trebled by law, plus costs of suit, prejudgment interest, and attorneys' fees pursuant to § 4 of the Clayton Act, 15 U.S.C. §15;

(c) enter a temporary and, upon final judgment, a permanent injunction to prevent current and future violations; and

(d) grant such further relief at law or in equity as the Court deems just and appropriate.

**Count II**
**Monopolization, attempted monopolization, and combination and conspiracy**
**to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**

Plaintiff incorporates by reference as if fully set forth the allegations in a paragraphs 1-100 of this Amended Complaint.

123.    Defendants have worked together to attempt to monopolize and/or combined and conspired to monopolize the music festival market in Miami during March 2019 and going forward.

124.    Prior to the Unanimous Vote, it was well known to the Defendants that the Rapture festival was scheduled for the subject weekend at Virginia Key.

125.    Based on information supplied to Rapture, the City, Ultra and EEG were supplied the Rapture application at the Unofficial Meeting.

126.    As described above, Rapture has become a growing alternative in competition to the Ultra festival in Miami.

127.    Defendants have conspired and several of the Defendants are entering into or otherwise benefit from an anti-competitive agreement that harms and otherwise damages Rapture.

128.    It is understood that the license agreement for the Ultra festival provides essentially 2 years at Virginia Key, which is essentially the same term announced for Rapture at Virginia Key.

129.    Without the Rapture festival taking place as announced to those that have purchased tickets and those interested, it will continue to lose financial supporters for the festival and its goodwill will be further damaged due to the actions of the Defendants.

130.    Without the Rapture festival taking place as announced to the DJs and other vendors associated with the Rapture festival, it will lose critical beneficial relationships to hold a festival and further lose its goodwill due to the actions of the Defendants.

131.    Without the Rapture festival, the Ultra festival has gained its monopoly.

132.   Based on information and belief, the license agreement as to the Ultra festival has an exclusivity clause, and clause limiting the use of the subject location for competitors.

133.   Based on information and belief, the license agreement as to the Ultra festival has additional language that restricts the City from allowing a part of Virginia Key from being used by a similar event for a number of years.

134.   The license agreement from the Official Meeting provides for protections to Ultra festival's monopoly for $2,000,000.00 to the City and VKBT.

135.   Rapture paid a special event application fee of $50, license fee for 2019 of $102.50 and $3,000.

136.   The Ultra festival prevents its DJs from working with others in Miami prior to, during or following the festival.

137.   It was known to the other Defendants that Ultra, EEG or its related or affiliated entities previously purchased it competitor, Winter Music Conference, to garner an actual or near monopoly, but for the 2017 start of the Rapture festival.

138.   By its efforts and conduct, Defendants have made it possible as a monopoly or near monopoly to block access to DJs, performers and other vendors for Rapture and others in Miami.

139.   Ultra and EEG possess the power to monopolize the relevant market.

140.   In fact, a license agreement as to the Ultra festival was negotiated about an limiting festival competitors, including Rapture.

141.   The City, Ultra, EEG and VKBT are engaged in attempted monopolization, and/or combination and conspiracy to monopolize that violate the Sherman Antitrust Act and Clayton Act.

142.    Defendants' acts are deliberate to silence and otherwise threaten and have been effective in creating an actual or near monopoly.  Individually and together, the Defendants are conspiring for this goal.

143.    These actions have and continue to result in harm both to competition generally and to Plaintiff specifically, in violation of Section 2 of the Sherman Act.

144.    Over five months before the Unanimous Vote, Rapture had already announced its festival for the subject weekend at Virginia Key, the same as prior years, and filed its special events application.

145.    Rapture was placed on the events calendar for the subject weekend at Virginia Key prior to the Unanimous Vote and the Unofficial Meeting.

146.    The City and VKBT have ignored and violated their own rules, contracts, regulations and procedure in their effort to conspire with Ultra and EEG to the detriment of Rapture and free trade.

147.    Defendants' unlawful attempted monopolization, and/or combination and conspiracy to monopolize both injured competition in music festival market in Miami during March 2019 and the future, including by reducing consumer choice, reducing jobs, income and work for local and out of state people, and creating ability to raise prices, by the unlawful exclusion of Rapture from the same market.

148.    Defendants' unlawful attempted monopolization, and/or combination and conspiracy to monopolize proximately caused Rapture economic loss and damages, which Plaintiff seeks to recover.

149.    Defendants' actions have let Rapture know that its festival will not proceed as scheduled without Court intervention.

150.    In addition to injunctive relief and actual damages, pursuant to 15 U.S.C. §15, Rapture seeks to recover treble damages, punitive damages, costs and attorneys' fees.

WHEREFORE, Plaintiff, Rapture respectfully requests that this Honorable Court:

(a) adjudge and declare that Defendants have engaged in unlawful conduct in violation of §2 of the Sherman Act, 15 U.S.C. § 1;

(b)    award Plaintiff actual damages, trebled by law, plus costs of suit, prejudgment interest, and attorneys' fees pursuant to § 4 of the Clayton Act, 15 U.S.C. §15;

(c)    enter a temporary and, upon final judgment, a permanent injunction to prevent current and future violations; and

(d)    grant such further relief at law or in equity as the Court deems just and appropriate.

## Count III
## Declaratory Judgment

Plaintiff incorporates by reference as if fully set forth the allegations in a paragraphs 1-100 of this Amended Complaint.

151.    This is an action for declaratory judgment as to Rapture's right for a permit and hold its event at Virginia Key on the weekend of March 29, 2019 and its weekend of March 2020.

152.    Virginia Key was promised to Rapture for 2019 and 2020.

153.    Consistent with that promise, Rapture submitted its application for the festival in March 2018.

154.    The Unofficial Meeting discussed the Rapture application.

155.    The Ultra festival relocation plans to Virginia Key was after the Rapture application was submitted for over five (5) months.

156.    The City with the VKBT intentionally ignored and willfully disregarded Rapture's application in order to deal with approving the agreement with EEG as to the Ultra festival.

157.    In light of the actions by the Defendants, it is Rapture's position that its festival shall proceed as original scheduled for the March 29, 2019 weekend at Virginia Key.

158.    The City, VKBT, Ultra and EEG take the position that the Ultra festival will take place on the March 29, 2019 weekend at Virginia Key.

159.    As a result of the Defendants' actions, both the Rapture festival and Ultra festival sold tickets for the same weekend at Virginia Key.

160.    As a result of the Defendants' actions, both the Rapture festival and Ultra festival sought DJs and entered agreements to support the respective festival for the same weekend at Virginia Key.

161.    The actions of Defendants create a bona fide, actual, present and practical need for a declaratory judgment regarding who will have a festival at Virginia Key on the weekend of March 29, 2019 and March 2020.

162.    Rapture's rights and obligations are dependent upon a determination of which festival at Virginia Key on the weekend of March 29, 2019 and the March 2020.

163.    The parties disagree on whose festival should occur on Virginia Key on the weekend of March 29, 2019 and March 2020.

164.    The parties disagree on the Defendants' violation of the approval process, the City Charter, regulations and rules that affects whose festival should have been heard for the Virginia Key location on the weekend of March 29, 2019 and March 2020.

165.    Rapture is not merely seeking legal advice or the answer of a question of curiosity.  Instead, Rapture is seeking a declaratory judgment from this Court that the agreement and approval for Ultra music

festival on Virginia Key on the weekend of March 29, 2019 is not valid and therefore null and void. That Rapture's festival shall proceed on the weekend of March 29, 2019, plus the right in March 2020.

WHEREFORE, Plaintiff, Rapture respectfully requests that this Honorable Court:

(a)      the agreement and approval for Ultra music festival on Virginia Key on the weekend of March 29, 2019 is not null and void;

(b)      Rapture's application should be reviewed, processed and properly considered first and otherwise prior to the Ultra music festival; and

(c)      such other and further relief as the Court deems just and proper, including by not limited to costs and expenses associated with brining this action.

## Count IV
## Violation of FDUPTA

Plaintiff incorporates by reference as if fully set forth the allegations in a paragraphs 1-100 of this Amended Complaint.

166.     This is an action for violation of Florida Deceptive and Unfair Trade Practices Act codified under Fla. Stat. §501 *et seq.*

167.     Plaintiff is engaging in commerce and trade in Florida and is "consumer" within the meaning and intent of Fla. Stat. §501.203.

168.     Rapture is entitled to the protection of said statute from those who engage in unfair methods of competition or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

169.     A violation of FDUPTA may be based upon "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c).

170.     Defendants engaged in the unconscionable acts or practices, and unfair or deceptive acts or practices, in the conduct of the approval process of the Ultra festival for Virginia Key for weekend of March 29, 2019 and jeopardizing Rapture's festival and its rights in 2019 and 2020.

171.     Losing its home at Bayfront Park and knowing Rapture was set to be the same weekend at Virginia Key, Ultra and EEG targeted Virginia Key for the same weekend.

172.     Defendants had an Unofficial Meeting as to moving the Ultra festival despite knowing the pending Rapture festival application and place on the calendar for special events.

173.     Prior to the wrongful acts, VKBT and the City openly invited Rapture back for 2019 and promised a Virginia Key home for the festival through 2020.

174.     The Unanimous Vote resulted in an opportunity for Ultra and EEG to shut down its competing Miami based festival held by Rapture.

175.     The linty of complaints and opposition to Ultra music festival at Bayfront Park's downtown urban setting, including being too disruptive and leaving garbage, did not stop the City and VKBT from approving and otherwise agreeing to the Ultra festival in the delicate ecosystem of Virginia Key.

176.     The Virginia Key Advisory Board, pursuant to the City's own ordinance, considered the Ultra festival at Virginia Key and resolved to oppose the City's arrangement with Ultra music festival and EEG.

177.     The ridiculousness of allowing the Ultra music festival in such an environmentally friendly location is a consideration for determining a violation of Florida Deceptive and Unfair Trade Practices Act.

178.     The City, VKBT, EEG and Ultra negotiated and formulated a plan to block Rapture's competitive festival.

179.    The City, VKBT, EEG and Ultra put a $2,000,000.00 price tag on taking Rapture's festival scheduled event.

180.    EEG agreed to indemnify the City and VKBT for the taking of Rapture's location and weekend.

181.    The City and EEG negotiated a license agreement that violates the City's Charter in order to avoid the Rapture festival application filed five (5) months earlier.

182.    The City and VKBT have ignored and violated their own rules, contracts, regulations, Charter and procedure in their effort to conspire with Ultra and EEG to the detriment of Rapture.

183.    The City has ignored the rules, recommendations, warnings and demands to further the conspiracy for the benefit of the private enterprise of other Defendants.

184.    Defendants afore-described, unfair competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of the above-referenced trade or commerce, constitute unfair or deceptive acts or practice under Florida Deceptive and Unfair Trade Practices Act.

185.    As a direct and proximate result of the Defendants' misconduct, Plaintiff have suffered substantial damages.

186.    Rapture has lost financial supporter and investors due to the actions of the Defendants to prevent its festival as scheduled.

187.    Rapture is damaged by ticket purchasers seeking refunds and losing confidence in a festival taking place due to Ultra festival proceeding on the Rapture festival weekend and location.

188.    Rapture has lost goodwill and relationships, including with DJs and its customers due to the actions of Defendants utilizing unfair competition, unconscionable acts or practices, and unfair or deceptive acts or practices as to the festivals.

189.    Pursuant to Fla. Stat. §501.211(1), moreover, without regard to any other remedy or relief to which Plaintiff is entitled, Plaintiff is also entitled to obtain a declaratory judgment that all or part of the Defendants' misconduct set forth above violates FDUPTA and to enjoin any future conduct by any person who is or was an agent, ostensible agent, servant, shareholder, partner, independent contractor, and/or employee of the Defendants, and has violated, is violating, or is otherwise likely to violate FDUPTA.

190.    Plaintiff is entitled to recover from the Defendants attorney's fees and costs in accordance with Fla. Stat. §§ 501.2105(1) and 501.211(2).

WHEREFORE, Plaintiff, Rapture respectfully requests that this Honorable Court:

(a)  declare that the Defendants' actions are in violation of FDUPTA;

(b)  award Plaintiff actual damages, special damages, plus costs and attorneys' fees;

(c)  enter a temporary and, upon final judgment, a permanent injunction to prevent current and future violations; and

(d)  grant such further relief at law or in equity as the Court deems just and appropriate.

**Count V**
**Tortious Interference**
(Ultra and EEG)

Plaintiff incorporates by reference as if fully set forth the allegations in a paragraphs 1-100 of this Amended Complaint.

191.    This is an action for tortious interference against Ultra and EEG as to the Rapture festival, right for approval and hold its event at Virginia Key on the weekend of March 29, 2019 and its weekend of March 2020.

192.    Ultra's and EEG's actions have driven away ticket purchasers, vendors, sponsors, DJs, and others from Rapture.

193.    Prior to the actions of Ultra and EEG, Rapture enjoyed a strong, advantageous and mutually beneficially relationship with VKBT.

194.    Prior to the actions of Ultra and EEG, Rapture enjoyed a strong, advantageous and mutually beneficially relationship with the City.

195.    Prior to the tortious acts, Rapture was openly invited back and promised a Virginia Key home for the festival for 2019 and 2020.

196.    Based on VKBT's and the City's promises, Rapture scheduled its festival for March 29, 2019 weekend, booked DJs, sold tickets, solicited potential guests, entered into contracts, applied to the City and worked with VKBT.

197.    The Rapture festival was placed on the calendar of events for the City for March 29, 2019 weekend at Virginia Key.

198.    Prior to the tortious acts, Rapture enjoyed an actual business relationship and prospective economic advantage for March 29, 2019 weekend at Virginia Key.

199.    Prior to the Unanimous Vote, Ultra and EEG knew of Rapture's plan to have its festival at Virginal Key on the weekend of March 29, 2019.

200.    At the Unofficial Meeting, Ultra and EEG were given Rapture's application for its festival for Virginal Key on the weekend of March 29, 2019.

201.    EEG and Ultra targeted Rapture and its festival, including its relationship with VKBT and the City for their gain.

202.    The relationship and festival were known to Ultra and EEG at all material times.

203.    This was an opportunity for Ultra and EEG to shut down its competing Miami based festival held by Rapture.

204.    Ultra and EEG intentionally and unjustifiably interfered with the relationships and the festival.

205.    Ultra and EEG were successful in breaking up the relationship of Rapture and VKBT for March 29, 2019 weekend at Virginia Key.

206.    Ultra and EEG were successful in breaking up the relationship of Rapture and the City for March 29, 2019 weekend at Virginia Key.

207.    Ultra and EEG were successful in breaking up the Rapture festival for March 29, 2019 weekend at Virginia Key, including Rapture's relationships with its DJs, vendors and ticket purchasers.

208.    Ultra's and EEG's actions damaged Rapture's business and goodwill.

209.    In addition to actual damages, Rapture seeks punitive damages.

WHEREFORE, Plaintiff, Rapture respectfully requests that this Honorable Court:

(a) award Plaintiff actual damages and punitive damages, plus costs;

(b) enter a temporary and, upon final judgment, a permanent injunction to prevent current and future interference; and

(c) grant such further relief at law or in equity as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

*Respectfully Submitted,*

SILVERBERG & WEISS, P.A.
*Attorneys for Plaintiff*
1290 Weston Road, Suite 218
Weston, Florida  33326
Notices@pkslegal.com
Telephone:  (954) 384-0998
Facsimile:  (954) 384-5390

By: ___/s/ *Paul K. Silverberg*_____
        Paul K. Silverberg, Esq.
        Fla. Bar No. 147877

### CERTIFICATE OF SERVICE

I certify that a true and correct copy hereof has been furnished via email and through the CM/ECF electronic service on the following: Scott D. Ponce at sponce@hklaw.com on this 12th day of February, 2019.

By: _/s/ Paul K. Silverberg_____
Paul K. Silverberg, Esq.