UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cv-20424-UU

YMD RECORDS, LLC,

    Plaintiff,

v.

ULTRA ENTERPRISES, INC., *et al.*,

    Defendants.
_____/

## **ORDER**

THIS CAUSE comes before the Court upon the Amended Complaint. D.E. 7.

THE COURT has considered the pertinent portions of the record and is otherwise fully advised in the premises. For the reasons discussed below, Rapture's Sherman Act claims are dismissed with prejudice, and its state-law claims are dismissed without prejudice.

On February 4, 2019, the Court dismissed Rapture's initial complaint *sua sponte*. D.E. 5. On February 12, Rapture filed the amended complaint, and it comes no closer to stating a claim than the first did. Rapture's amended complaint is little more than a list of reasons why Rapture thinks the Ultra music festival is no good. But the legal claims attached to that list are incidental; like a rickety soapbox, they serve no purpose other than to hoist Rapture's list of grievances into court and, from there, into the public's view.

The Sherman Act claims, in particular, are not proper claims for the facts alleged. They are, simply put, baseless. And the Court will not clutter its busy docket with a case that relies on the Sherman Act for federal jurisdiction when the facts, as stated and if proven, would clearly not amount to a restraint of trade, illegal monopolization, or a conspiracy within the meaning of the

antitrust laws.  The Court does not, however, take the position that Rapture could not possibly state a claim under some state law, and accordingly the Court will not dismiss the state law claims with prejudice.

## BACKGROUND

These facts come from the amended complaint (D.E. 7) and, at this stage, are taken as true.

Plaintiff, YMD Records, ("Rapture"), produces the Rapture music festival, which for the past two years, has been held on Virginia Key in March.  D.E. 7 ¶¶ 12, 13.  Defendants Ultra Enterprises ("Ultra") and Event Entertainment Group ("EEG") run the Ultra music festival, which until September 2018, was held annually at the Bayfront Park in Miami.  *Id*. ¶ 17.  In September 2018, Ultra was forced to look for a new location after the city of Miami voted against Ultra returning to the Bayfront Park location.  *Id*. ¶ 18.

In January 2018, Defendant Virginia Key Beach Trust (the "Trust"), published a letter from its executive director stating that the Trust welcomed a three-year plan for Rapture to perform at Virginia Beach Park and expressing the "intention [] for the event to be held at this venue for the next 3 years."  *Id*., ex. A.  And so, on March 11, 2018, Rapture submitted its application to hold its music festival at Virginia Key Beach during the last weekend of March 2019.  *Id*., ex B.  Then, in October 2018, Rapture paid its application fee and deposit for the beach park.  *Id*. ¶ 44.  Rapture expected that the City of Miami (the "City") would hold a hearing on its application in November 2018, as it had done in previous years.  *Id*. ¶ 29.  But City officials told Rapture that its approval hearing would not occur in November.[1]  *Id*. ¶ 35.

Instead, in November, the City planning commission met and voted to allow Ultra to host its music festival on Virginia Key during the last weekend of March 2019.  *Id*. ¶ 38.  At that

---

[1] The amended complaint does not say whether a hearing on Rapture's application was ever held.

meeting, certain City officials misled the commission by saying that Rapture had not paid its deposit. *Id.* ¶ 41. Someone somehow prevented Rapture from correcting this error (the complaint does not say who or how). *Id.* ¶ 42. Sometime after this meeting, someone informed Rapture (again, the complaint does not say who) that there is no way for its application to be approved. *Id.* ¶ 48.

Rapture alleges that the City's approval of the Ultra music festival for the last weekend in March arose out of a meeting between Defendants in October 2018, to which Rapture was not invited. *Id.* ¶ 25. After that meeting, the City planning commission met to discuss the November hearing where they would vote on Ultra's application. *Id.* ¶ 31. At that meeting, certain City officials misled other officials[2] by saying that Rapture's festival had been canceled or rescheduled. *Id.* ¶ 32.

Rapture alleges that the misleading information presented at the two commission meetings was part of a conspiracy between all Defendants to block Rapture from holding its festival. *Id.* ¶¶ 49, 50. It appears (although the amended complaint is far from clear) that the City and Trust conspired to block Rapture's festival because Ultra agreed to pay them a $2 million license fee. *Id.* ¶¶ 53, 54. As further evidence that the City and Trust were conspiring to replace Rapture's festival, Rapture alleges that the Ultra festival was disruptive, dirty, and bad for the "delicate environment" of Virginia Key. *Id.* ¶ 55. The decision to allow the Ultra festival at the "environmentally friendly" beach park, therefore, was "ridiculous[]" and "a signal of an antitrust violation and unfair competition." *Id.* ¶ 58.

Rapture alleges that this conspiracy caused it a litany[3] of damages including lost relationships and goodwill with DJs, vendors, and ticket purchasers. *Id.* ¶¶ 82–98.

---

[2] The complaint does not say whether the members of the commission were misled.
[3] *Compare* D.E. 7 ¶ 55.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) provides that a plaintiff's pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has stated that a plaintiff must submit "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In considering a motion to dismiss for failure to state a claim, the "plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)). Although "[a] plaintiff need not plead 'detailed factual allegations[,] . . . a formulaic recitation of the elements of a cause of action will not do,'" and the plaintiff must offer in support of its claim "sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Simpson*, 744 F.3d at 708 (quoting *Twombly*, 550 U.S. at 555)).

## DISCUSSION

### I.     Shotgun Pleading

As an initial matter, the amended complaint, like the initial complaint is a shotgun pleading. Every factual allegation is incorporated by reference into every count. *See Great Fla. Bank v. Countrywide Home Loans, Inc.*, 2011 WL 382588, at *2 (S.D. Fla. Feb. 3. 2011). "A shotgun-style complaint [is] one that 'incorporates all of the general factual allegations by reference into

4

each subsequent claim for relief.'" *Id.* (citing *Ferrell v. Durbin*, 311 Fed. App'x 253, 259 (11th Cir. 2009)). Such a form is "disfavored as 'unhelpful and poorly drafted,' and the experience 'teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.'" *Id.* (citing *Paramo v. IMICO Brickell, LLC*, No. 08-20458-CIV, 2008 WL 4360609, at *8 (S.D. Fla. Sept. 24, 2008)). Additionally, the amended complaint is riddled with typos and paragraphs so poorly written that they are unintelligible. *See, e.g.*, D.E. 7 ¶¶ 21, 42, 55, 57, 66, 67, 112, 180. Dismissal is appropriate on those grounds alone. But, as discussed below, the amended complaint fails substantively as well.

## II. Count I: Conspiracy to Restrain Trade in Violation of Section 1 of the Sherman Act

The elements of a Sherman Act section 1 claim are: (1) an agreement between two or more parties (2) that unreasonably restrains trade. 15 U.S.C.A. § 1; *Levine v. Central Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545 (11th Cir.1996). Rapture's amended complaint fails under both prongs.

*Twombly* is instructive because it analyzed a section 1 claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. at 556. There the Supreme Court held that a section 1 plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* Thus, Rapture must plead facts—not conclusory statements—that "raise a reasonable expectation" that an illegal agreement will be revealed during discovery. *Id.*

Rapture fails to allege facts tending to show an agreement between Defendants. Rapture alleges only that Defendants met once in October 2017, to discuss holding Ultra at Virginia Key on the last weekend of March. D.E. 7 ¶ 25. This is not sufficient to plead an agreement. *See Appleton v. Intergraph Corp.*, 627 F. Supp. 2d 1342, 1352 (M.D. Ga. 2008) ("It is not sufficient

5

that the facts in the complaint be *consistent with* a meeting of the minds; the plaintiff must instead plead facts that go beyond this to suggest that there *actually was* an agreement.") (citing *Twombly*, 550 U.S. at 556). For one thing, Rapture does not allege that Defendants made an agreement at that meeting. The when and where of the alleged agreement are missing from the amended complaint. For another thing, Rapture pleads no other facts that tend show an agreement. Rapture does no more than suggest that Defendants had an incentive to make an agreement, but Rapture fails to connect the dots. *See* D.E. 7 ¶¶ 53–58. Lastly, Rapture's allegation that there must have been an agreement because of the "ridiculousness" of allowing Ultra to hold its festival at the "delicate ecosystem" of Virginia Key, adds nothing at all. This isn't even speculative or conclusory support for the existence of an agreement; it's simply irrelevant.

Rapture likewise fails to plead that the agreement unreasonably restrained trade. *See* 15 U.S.C. § 1. An agreement to restrain trade is not unlawful unless it is "unreasonable." *Id*. A restraint is unreasonable if it is either *per se* unreasonable or fails the "rule of reason" test. *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1569 (11th Cir. 1991).

Before the Court begins this analysis, it must first decipher the precise nature of the restraint that Rapture alleges. Cutting through the chaff, the Court finds in the amended complaint the following alleged restraint: "If Ultra and EEG are successful with the conspiracy of the City and [the Trust], there would be a monopoly and make in [sic] nearly impossible for a competitive festival in Miami in March." D.E. ¶ 67. Rapture alleges that this monopoly would allow Ultra to control prices, restrict access to vendors and performers, and reduce consumer choice. *Id*. ¶¶ 62, 115, 121.

Turning now to the analysis of unreasonableness, *per se* unreasonableness is limited to certain specific restraints: (1) horizontal and vertical price fixing, *see United States v. Socony–*

*Vacuum Oil Co.*, 310 U.S. 150 (1940); (2) horizontal market divisions, *see Timken Roller Bearing Co. v. United States*, 341 U.S. 593 (1951); (3) group boycotts or concerted refusals to deal, *see Fashion Originators' Guild, Inc. v. FTC*, 312 U.S. 457 (1941); and (4) tying arrangements, *see Northern Pac. Ry.*, 356 U.S. 1 (1958).  Although Rapture alleges in conclusory terms that the alleged agreement constitutes a *per se* unreasonable restraint (*see* D.E. 7 ¶ 116), the facts alleged here do not fit into any of the categories listed above.  Accordingly, the Court turns to the rule of reason test. *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1073 (11th Cir. 2004).

The rule of reason test requires the plaintiff to plead facts that, if true, would prove that the agreement had unreasonable effects on competition. *Id.*; *see also Appleton*, 627 F. Supp. 2d. at 1354.  To that end, a plaintiff must first cross the threshold of showing that a defendant has power in the relevant market. *Spanish Broad*, 376 F.3d at 1073; *see also Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1552 (11th Cir. 1996).  Market power alone, however, is not sufficient to state a claim. *Spanish Broad*, F.3d at 1073. The plaintiff must also allege: "(1) the anticompetitive effect of the defendant's conduct on the relevant market, and (2) that the defendant's conduct has no pro-competitive benefit or justification." *Levine*, 72 F.3d at 1551 (11th Cir.1996).  A plaintiff may satisfy the first prong by alleging either that the conduct has an actual detrimental effect on competition or that it has the potential for genuine adverse effects on competition. *Id.* at 1551. Regardless, the harm must be to competition in general, and not just to a few competitors. *Spanish Broad.*, 376 F.3d at 1071.

Here Rapture defines the relevant market as music festivals in Miami in March. D.E. 7 ¶ 67.  In fact, the market is even smaller.  The market is music festivals on Virginia Key during the last weekend in March.  Put simply, this is not cognizable market.  To state a section 1 claim, a

plaintiff must allege a harmful effect upon "a more generalized market." *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 558 (7th Cir. 1980) (citing *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 562 (1st Cir. 1974)). The Seventh Circuit explained that to allow the market to be defined so narrowly risks turning the Sherman Act into a remedy for simple commercial torts:

> Otherwise the mere fact that one party bid successfully against another party for a contract would be equivalent to an anticompetitive effect and would raise the specter of an antitrust action being used as a remedy for any tortious conduct during the course of the competition. This would be contrary to the repeated view of the Supreme Court that the antitrust laws do "not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce." *Hunt v. Crumboch*, 325 U.S. 821, 826, 65 S.Ct. 1545, 1548, 89 L.Ed. 1954 (1945).

*Havoco*, 626 F.2d at 558.

Besides being too small a market, Rapture fails to allege competitive harm to that market. Rapture's allegations that Ultra could control prices, restrict access to vendors and performers, and reduce consumer choice, are purely speculative. Accordingly, Rapture's section 1 claim fails.

### III.   Count II: Conspiracy to Monopolize or Attempt to Monopolize in Violation of Section 2 of the Sherman Act

The elements of a Sherman Act section 2 claim are (1) possession or power in the relevant market and (2) the willful acquisition of that power as distinguished from growth due to a superior product, business acumen, or historical accident. 15 U.S.C. § 2; *Levine*, 72 F.3d at 1555. "Monopoly power is 'the power to raise prices to supra-competitive levels or . . . the power to exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market.'" *Id*. (citation omitted). "Monopoly power under § 2 requires, of course, something greater than market power under § 1." *Id*.

The elements of an attempted violation of section 2 are slightly different. They are: "'(1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to

monopolize and (3) a dangerous probability of achieving monopoly power.'" *Spanish Broad.*, 376 F.3d at 1074 (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)).

As to a straightforward violation of section 2, the claim fails because, as above, the market is not cognizable. Additionally, Rapture fails to allege willful acquisition of monopoly power. Again, Rapture fails to plead an agreement between the Defendants to kick Rapture out of the venue. Accordingly, as it stands, the allegations show only that two festival organizers competed for a venue, one got it, the other didn't, and now the latter is sore about it.

As to an attempted violation of section 2, the claim fails because Rapture fails to plead predatory or anticompetitive conduct of any kind. Likewise, Rapture fails to plead a specific intent to monopolize or a probability of achieving monopoly power because, again, there is no cognizable market to be monopolized. *See Appleton*, 627 F. Supp. 2d at 1357 (M.D. Ga. 2008) ("The facts set out in the Complaint also fall short of stating a claim for relief under § 2 because Intergraph's conduct only harms Plaintiff, and not competition in general."). Accordingly, Rapture's section 2 claim fails.

### III.     Count III: Declaratory Judgment

As an initial matter, Rapture does not specify whether its declaratory judgment claim is brought under the federal or state law. Ultimately, it does not matter; the Court will not entertain the claim either way.

Rapture's request of declaratory relief is divorced from any of the other claims in the complaint. Rapture does not plead, for example, that the alleged statutory or common-law violations give rise to a right to declaratory relief. Instead, the declaratory judgment claim arises out of nothing more than the City and Trust's decision to "intentionally ignore[] and willfully disregard[] Rapture's application . . . ." which "creates a bona fide, actual, present, and practical

need for declaratory judgment." D.E. 7 ¶¶ 156, 160. But on what grounds? Rapture has not pleaded the existence of any rights or other "legal relations" that require determination besides those covered by its statutory and common-law claims. *See* 28 U.S.C. § 2201; Fla. Stat. § 86.011; *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937). The case might be different had Rapture pleaded, for example, a property right in the venue and date that it wanted, but Rapture has not.

Regardless, under either federal or Florida law, the decision to entertain a declaratory judgment claim is discretionary. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 776, 166 L.Ed.2d 604 (2007) ("The Declaratory Judgment Act provides that a court may declare the rights and other legal relations of any interested party, not that it must do so."); *Travelers Ins. Co. v. Emery*, 579 So.2d 798, 800 (Fla. 1st DCA 1991) (holding that declaratory relief "remains discretionary with the court"). And where statutory or common-law claims would address the issues covered by a declaratory judgment claim, the Court may exercise that discretion against entertaining the claim. *See, e.g.*, *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1375 (M.D. Fla. 2008) ("In its discretion as to whether to entertain a declaratory judgment action, the Court holds that the infringement claims brought by both sides in this case will decide the issues at stake in OSTI's claim for declaratory judgment."). Here, any issues that this empty declaratory judgment claim might have covered would be fully addressed by statutory or common-law claims (assuming Rapture had adequately pleaded them) and so the Court declines to exercise its discretion to entertain a claim for declaratory judgment.

Additionally, as discussed above and below, all of Rapture's statutory and common-law claims fail, and therefore the declaratory judgment count should also be dismissed. *See DeWeese*

*v. JPMorgan Chase Bank, N.A.*, No. 2:13-CV-00059-RWS, 2013 WL 6178546, at *6 (N.D. Ga. Nov. 25, 2013).

### IV. <u>Count IV: Violation of Florida Deceptive and Unfair Practices Act</u>

A claim under FDUPTA has three elements: "(1) a deceptive or unfair practice; (2) causation; and (3) actual damages." *Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14208-CIV, 2013 WL 12199875, at *4 (S.D. Fla. Apr. 23, 2013). Moreover, a plaintiff "must not only plead and prove that the conduct complained of was unfair and deceptive" but also "that he or she was aggrieved by the unfair and deceptive act." *Macias v. HBS of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997); *see also Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985) ("The act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer.").

Rapture repeats the allegations supporting its Sherman Act claims in support of its FDUPTA claim. Specifically, Rapture alleges that Defendants engaged in unfair practices when they met and discussed holding the Ultra festival at Virginia Key Beach Park during the last weekend in March 2019. D.E. 7 ¶ 172. Rapture alleges, again, that the unfair nature of this agreement is evidenced by the "ridiculousness" of allowing Ultra at the environmentally friendly beach park, Ultra's license fee, and the fact that the City ignored certain (unidentified) rules. *Id.* ¶¶ 178–183.

But again, the allegations supporting Rapture's claim that Defendants engaged in any unfair practices are insufficiently supported or speculative. Here, Rapture fails to sufficiently allege that Defendants did anything other than reward a contract in a competitive environment to one music-festival producer over another. *QSGI, Inc. v. IBM Glob. Fin.*, No. 11-80880-CIV, 2012 WL 1150402, at *4 (S.D. Fla. Mar. 14, 2012) (dismissing a FDUPTA claim that was "merely a

11

repackaging of the allegations for [plaintiff's] antitrust claims); *see also Hunter v. Bev Smith Ford*, LLC, No. 07–80665–CIV–RYSKAMP, 2008 WL 1925265, at *9 (S.D.Fla. Apr.29, 2008) (dismissing FDUTPA claims where plaintiffs based all FDUTPA allegations on violations of state and federal statutes that the court had already considered and rejected, thus there could be no FDUTPA violation). Additionally, Rapture fails to explain who made the allegedly false statements to the city commission, whether Ultra and EEG had any hand in causing those misrepresentations to be made, and whether those misrepresentations caused the City commission to give the venue and date to Ultra. *See Blackhawk*, 2013 WL 12199875 at *4 (dismissing a FDUPTA claim because the plaintiff "fail[ed] to specify precisely what statements were made; whether the statements were oral or written; the person(s) who made the statements . . . the content of each statement; and the manner in which each statement misled the Plaintiff"). Rapture does nothing more than raise a specter of conspiracy.

What's more, Rapture has not alleged causation or damages. Rapture does not allege that its application has been denied or that it could not hold its festival at another time or nearby venue. Rapture does not even allege that it could not hold its festival at the same venue at a different time. And in fact, Rapture alleges that sometime in the last two weeks, the City asked Rapture to provide dates for its planned festival. D.E. 7 ¶ 45. Rapture's litany of damages depends on its festival not happening, and Rapture has not alleged that it will not or cannot happen.

### V.    Count V: Tortious Interference

The elements of a tortious interference claim are: "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a

result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (internal quotations omitted).

Rapture levels its tortious interference claims against Ultra and EEG only. It alleges that Ultra and EEG's "actions" broke up the "relationship of Rapture and [the City and Trust] for March 29, 2019 weekend at Virginia Key." D.E. 7 ¶¶ 205, 206. Rapture's claim fails on the third and fourth elements.[4]

The third element, intentional and unjustified interference, requires a plaintiff to allege that the defendants acted without justification. *Duty Free Americas*, 797 F.3d at 1280. But Florida law recognizes a "privilege of interference." *Id*. (quoting *Wackenhut Corp. v. Maimone*, 389 So.2d 656, 657–58 (Fla.Dist.Ct.App.1980). "This means that where 'there is no contract right to have the relation continued, but only an expectancy . . . a competitor has the privilege of interference in order to acquire the business for himself.'" *Id*. (quoting *Wackenhut*, 389 So.2d at 657–58).

Here, Rapture's claim fails the third element for two reasons. First, Rapture does not allege that these two Defendants did anything to interfere with its prospective interest in holding its festival at Virginia Key during the last weekend in March. The only allegation about these two Defendants is that they met with the City and Trust in October and discussed holding the Ultra festival at that venue and time. But critically, Rapture does not allege that these Defendants made false statements to the city commission, instructed or otherwise arranged for the unidentified "city officials" to do so, or in any other way interfered with Rapture's anticipated festival venue and time. *See* D.E. 7 ¶¶ 32, 41. Second, even if Ultra and EEG did attempt to convince the City and Trust to give Rapture's venue and time to Ultra, that effort falls within the privilege of interference because Rapture does not allege that it was contractually entitled to that venue and time.

---

[4] Rapture's claim stands on shaky ground with respect to the first element, but the Court gives Rapture the benefit of the doubt on that element and skips ahead to the third and fourth where the claim stands on nothing at all.

As to the fourth element, damages, Rapture's claim fails for the same reason its FDUPTA claim fails. It damages are speculative and dependent upon its festival not happening. And Rapture has not alleged that it will not or cannot happen at a proximate venue or time. Accordingly, Rapture's final claim fails.

## **CONCLUSION**

In its order dismissing the first complaint *sua sponte*, the Court warned Rapture that it would have one and only one chance to amend. D.E. 4. Rapture has now twice failed to state a claim as to these same five counts. And despite that Rapture is represented by counsel, the substantive allegations of its amended complaint are not materially different from those of its first complaint. Accordingly, the Court finds that it would be futile to permit Rapture a third bite at the apple and not in accordance with the purpose of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; *see Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 544 (11th Cir. 2002) ("We now have decided that a district court is not required to grant a plaintiff who is represented by counsel leave to amend his complaint sua sponte."); *see also see also Twombly*, 550 U.S. at 546 ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.").

Nevertheless, the Eleventh Circuit holds that if a district court dismisses all federal claims, but nonetheless retains supplemental jurisdiction to dismiss state law claims too (as the Court did here)[5] it "should usually do so without prejudice as to refiling in state court." *Vibe Micro, Inc. v.*

---

[5] The Court may do so as a matter of discretion. *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("[C]onsiderations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction."). Here the Court chose to do so to give Rapture guidance in repleading its state-law claims in state court and to give the state court a starting point from which to analyze those claims.

14

*Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) (citing *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)).  Accordingly, the Court dismisses the Sherman Act claims with prejudice, and the state-law claims without prejudice.  It is, therefore, hereby

ORDERED AND ADJUDGED that the Counts I and II of the amended complaint (D.E. 7) are DISMISSED WITH PREJUDICE.  Counts III through V are DISMISSED WITHOUT PREJUDICE.  It is further

ORDERED AND ADJUDGED that the case is **CLOSED** for administrative purposes.  All hearings are CANCELLED; all motions DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 15th day of February, 2019.

_____
UNITED STATES DISTRICT JUDGE

cc:  counsel of record via cm/ecf